JOHN F. PROCTOR, In Equity, *vs.* EDWARD M. RAND, Trustee.

Cumberland. Opinion August 25, 1900.

*Equity. Practice. Trusts. Relinquishment. Estoppel. Evidence.*

The decision of a single justice upon matters of fact in an equity hearing should not be reversed unless it clearly appears that such decision is wrong. The burden to show the error falls upon the appellant. He must show the decree appealed from to be clearly wrong; otherwise it will be affirmed.

*Held;* in this case, that the appellant has failed to sustain this burden; and that, on the contrary, the finding of facts by the court below is amply sustained by the evidence in the case.

Upon a bill to enforce an express and resulting trust in land, the appellant alleged that, at the time of the purchase and conveyance of the lot in question, he made one-half of the cash payment; that the other half was made by John W. Lane, the defendant's testator; that subsequently the income received from the land was shared by them equally; that payments upon the note and mortgage given back by Lane, to secure a part of the purchase price, were made from the income of the land and by contributions equally made by them. Thereupon, the appellant claims that a trust resulted in his favor by implication of law, as to one-half in common of the premises, and that defendant's testator became seized thereof in trust for him. He further alleges in his bill that Lane made written declarations of trust, on three different dates, in which he acknowledged the trust. The defendant in his answer denied all the important allegations relied upon by the plaintiff.

At the hearing before a single justice, upon bill, answer, replication and proof, the appellant introduced evidence tending to prove the existence of a trust in his favor, both as resulting by implication of law, and by reason of the declarations of trust made by the defendant's testator. The justice who heard the cause did not decide whether or not the facts relied upon by the appellant did create a trust in his favor, but decided that whatever rights the appellant may have had earlier in or to this property, either as beneficiary or otherwise, had been voluntarily released and abandoned by him on or before June 1, 1889, in and by virtue of a new arrangement with the defendant's testator. A decree was consequently rendered by him dismissing the bill.

Assuming that the evidence introduced by the appellant was sufficient to show that a trust had once existed in his favor, as to one undivided half of the property in question, it is considered by the court that the evidence in the case, fully sustains this finding of fact, and warrants the decree dismissing the bill.

No question is raised by the plaintiff, and it is unnecessary to decide, as to what extent the acts and conduct of the trustee and the cestui que trust, they being sui juris, are competent for the purpose of showing that a trust, which had once existed, had been voluntarily relinquished by the cestui que trust in, and in consideration of, some subsequent transaction between them, because the acts and conduct of the appellant in this case subsequent to June 1, 1889, and the reliance thereon by the defendant, are sufficient to estop the appellant from denying that he had so relinquished his equitable interest in this property, whatever that interest may have been.

The appellant offered in evidence one of the memoranda, or declarations of trust, which had an unsigned paper, prepared after the death of Lane and attached by mucilage, and containing, among other things, an agreement that this property should be held by the defendant as trustee, etc., and also an assignment to a third party of all the appellant's "right, title and interest in and to the within agreement and declaration to which this is annexed and the property therein described." Objection having been made to the admission of the memorandum while this paper remained attached to it, the court excluded it until the unsigned paper was detached, which was finally done.

The memorandum, signed by Lane, was then admitted without objection and the appellant took exception to the exclusion of the other paper. *Held;* that the ruling was unquestionably correct.

IN EQUITY. ON EXCEPTIONS AND APPEAL BY PLAINTIFF.

The case is stated in the opinion.

*Clarence W. Peabody*, for plaintiff.

Declarations of trust: R. S., c. 73, § 11; Ames' Cases on Trusts, note p. 178; *McLellan* v. *McLellan*, 65 Maine, 500, and cases cited; *Steere* v. *Steere*, 5 Johns. Ch. 1; *Second Unit. Soc. in Portland* v. *Woodbury*, 14 Maine, 281; *Frost* v. *Frost*, 63 Maine,

399; *Blake* v. *Collins*, 69 Maine, 156; *Barrell* v. *Joy*, 16 Mass. 220; *Montague* v. *Hayes*, 10 Gray, 609; *Robson* v. *Hartwell*, 6 Ga. 589, 604; *McLaurie* v. *Partlow*, 53 Ill. 340, 345; *McCubbin* v. *Cromwell*, 7 Gill. & J. (Md.) 157; *Kingsbury* v. *Burnside*, 58 Ill. 310; *Newkirk* v. *Place*, 47 N. J. Eq. 477; *Smith* v. *Wilkinson*, 3 Ves. Jr., 705; *Forster* v. *Hale*, 5 Ves. 308,315; *Dale* v. *Hamilton*, 3 Phill. 266, 272.

Resulting trust: *Buck* v. *Pike*, 11 Maine, 9; *Dwinel* v. *Veazie*, 36 Maine, 509; *Baker* v. *Vining*, 30 Maine, 121; *Burleigh* v. *White*, 64 Maine, 23; *Buck* v. *Swazey*, 35 Maine, 41; *Dudley* v. *Bachelder*, 53 Maine, 403; *Hull* v. *Russell*, 36 Maine, 115, 124.

*Edward M. Rand*, for defendant.

SITTING: WISWELL, C. J., EMERY, HASKELL, SAVAGE, FOG-LER, JJ.

WISWELL, C. J. In this bill in equity against the defendant as trustee under the will of John W. Lane, deceased, the plaintiff seeks the enforcement of a trust as to one-half, in common and undivided, of a lot of land situated at the corner of Pearl and Congress streets in the city of Portland, which trust in his favor he claims both as resulting by implication of law and under alleged declarations of trust made by the defendant's testator.

He alleges in his bill, in substance, that at the time of the purchase and conveyance of the lot in question to Lane, one-half of the cash payment was made by himself and one-half by Lane; that subsequently the income received from said premises was shared by them equally and that payments upon the note and mortgage, given back by Lane to secure a portion of the purchase price, were made from the income of the premises and by contributions equally made by them; that consequently a trust resulted by implication of law in his favor as to one-half in common of the premises, and that Lane became seized thereof in trust for him.

He also alleges that on December 9, 1885, Lane made a declaration of trust in which he acknowledged that he stood seized and held one-half in common and undivided of the premises in trust for the

plaintiff, his heirs and assigns forever; and that on December 10, 1886, Lane made a similar declaration of trust; that Lane died on September 15, 1889, and that under his will the defendant became seized of the premises charged with the same trust in favor of the plaintiff.

The defendant in his answer denies all the important allegations relied upon by the plaintiff. The case was heard by a justice of this court upon bill, answer, replication and proof and comes here upon an appeal from his decree dismissing the bill, and also upon an exception to a ruling excluding certain testimony.

There is no question as to the following facts: The lot in question was conveyed to Lane by an absolute deed of warranty on July 31, 1883, and the legal title remained in him until his death on September 15, 1889, and has since been in the defendant as a testamentary trustee under Lane's will. The cash payment of $500 made at the time of the purchase, was paid equally by the plaintiff and by Lane, that is, the whole sum, in the first instance, was paid by the plaintiff and one-half thereof was subsequently repaid to him by Lane. The justice who heard the cause found: "That thereafterward (subsequent to the purchase) during the life-time of Lane, he received all the income, and paid all the charges on the land, and made payments upon the mortgage debt, and since his death Rand has continued to receive the income and pay charges and has fully paid the mortgage debt. Proctor has contributed nothing to these payments." That this is true, relative to the time since Lane's death, is uncontradicted.

On December 10, 1884, Lane made a written statement, signed by him, respecting various lots of land in which he was in different ways concerned with the plaintiff, and some of which he held as security for the plaintiff's notes and for his indorsements, in which he makes use of the following language as to the lot in question: "I also hold deed of land on the corner of Congress and Pearl streets of James H. Smith & Bro. and under lease to Oren Hooper, the net profits from sale of said property or income to be divided equally with the said Proctor."

A year later, on December 9, 1885, Lane made and gave to the

plaintiff another memorandum similar to the latter, referring to various lots of lands in which they were jointly concerned, which contains the following statement respecting the lot in question: "I also hold a deed of land corner of Congress and Pearl streets of James H. Smith and Henry St. John Smith, and under lease to Oren Hooper, in which property the said Proctor is jointly interested, and the net profits derived from the sale thereof, or the income therefrom, is to be divided equally with the said Proctor."

Again, on December 10, 1886, in another memorandum of the same kind, made and signed by Lane and delivered to the plaintiff, the same language was used respecting the lot in question.

The justice who heard the cause did not decide whether or not these facts, either the original payment by the plaintiff of one-half of the cash purchase price, or the subsequent statements of Lane, claimed to be declarations of trust, would create a trust in favor of the plaintiff as claimed by him, saying in his finding of facts filed and made a part of the case: "Without deciding whether this claim is well founded, or whether Proctor's interests were only in the income or profits when the lot should be sold, I pass to later transactions, which seem to me decisive of this cause."

Assuming, without deciding, that the facts already stated would create a trust in behalf of the plaintiff, as to one undivided half of the lot in question, it is only necessary now to inquire whether the further finding made by the justice who heard the cause, that whatever right the plaintiff may have had by virtue of the facts above referred to was subsequently voluntarily relinquished by him in other transactions between him and Lane, is justified by the evidence. This finding is expressed by the sitting justice in these words: "It is clear from the written agreements of the parties, and the acts, admissions and claims of Proctor since June 1, 1889, and since the death of Lane, that whatever right Proctor may have had earlier in or to this lot, or the profits on its sale, or as beneficiary of a trust therein, that, by arrangement with Lane, such right had been released and abandoned by Proctor on or before June 1, 1889, and that thereafter he only claimed a right to pur-

chase, not evidenced by any writing nor proved to have been agreed to by Lane in any manner."

The decision of a single justice upon matters of fact in an equity hearing should not be reversed unless it clearly appears that such decision is erroneous. The burden to show the error falls upon the appellant. He must show the decree appealed from to be clearly wrong, otherwise it will be affirmed. *Young* v. *Witham,* 75 Maine, 536; *Paul* v. *Frye,* 80 Maine, 26; *Hartley* v. *Richardson,* 91 Maine, 428.

In the opinion of the court the appellant has failed to sustain this burden; upon the contrary, we think that the finding of facts is amply sustained by the evidence of the case.

The defendant offered in evidence a duplicate of the memorandum of December 9, 1885, already referred to, which bears upon its back the following indorsement, signed by both Proctor and Lane: "Cancelled June 1,—'89—by new agreement." On the same day Lane had caused to be drafted an agreement referring to various lots of land, not identical with those referred to in the previous statements, and of which, he says in the statement, deeds are "to be delivered to said Proctor when the notes now held by me or indorsed by me for the said Proctor shall be paid." This memorandum also contains the following statement: "All agreements signed by me previous to this date are to be cancelled." Before this memorandum of June 1, 1889, was signed or delivered to the plaintiff, it was shown to him for his approval and he caused the following statement to be written therein: "The property on the corner of Pearl and Congress Sts. bot. of the Smiths and under lease to Oren Hooper and Son is to be delivered to said Proctor, he paying me the amount that I have paid out and one thousand dollars bonus on the same." But when the memorandum was taken back to Lane he refused to sign it until this latter clause had been stricken out, when he did sign it and delivered it to the plaintiff's clerk.

It is true, that Proctor claims that he did not accept this paper of June 1, 1889, with the erasure; but, as said by the sitting justice, "he never demanded back his cancellation of the statement of December 9, 1885, nor returned to Lane the statement of June 1,

1889, nor made any complaint to Lane in regard to it.   He relied upon the paper to establish his rights to lots mentioned therein, and not included in the prior statement, and produced the paper at this hearing."

On November 22, 1889, shortly after the defendant's qualification as trustee, the plaintiff presented to the defendant a written, though unsigned, statement of his claim to the same lots mentioned in the memorandum of June 1, 1889, and to one other lot not mentioned therein.   In this written statement the plaintiff used this language with reference to the lot in question:   "The Hooper property, corner of Pearl and Congress streets belongs to me, on my paying inside of a year from Sept. 22d, 1889, the amount John W. Lane has invested in it over and above rents he has received and also a bonus to said Lane of 1000 dollars."   This claim being similar to the clause which he had caused to be inserted in the statement of June 1, 1889, but is entirely inconsistent with the claim that he now makes that Lane held one-half of the property in trust for him, either because of a resulting trust by reason of the original purchase, or as an express trust because of the alleged declarations of trust.

In view of these facts, the cancellation of the memorandum of December 9, 1885;   the statement in the memorandum of June 1, 1889, that:   "All agreements signed by me (Lane) previous to this date are to be cancelled;"   the claim made by the plaintiff at the time that the memorandum of June 1, 1889, was drawn, as shown by the clause which he caused to be inserted therein;   the fact that even that clause was erased by Lane before he signed the paper;   and finally the claim made by the plaintiff in the written statement handed by him to the defendant, shortly after the latter's qualification as trustee, we think that the finding and conclusion of the sitting justice to the effect that any right that the plaintiff might have earlier had in this lot or its income or profits, or as a beneficiary of a trust therein, had been, by virtue of an arrangement with Lane, released and abandoned by the plaintiff on or before June 1, 1889, are amply sustained by the evidence.

No question is raised by the plaintiff, and it is unnecessary to

decide, as to what extent the acts and conduct of the trustee and the cestui que trust, they being sui juris, are competent for the purpose of showing that a trust, which had once existed, had been voluntarily relinquished by the cestui que trust in and in consideration of some subsequent transaction between the parties, because the acts and conduct of the plaintiff in this case subsequent to June 1, 1889, and the reliance thereon by the defendant, are certainly sufficient to estop the plaintiff from denying that he had so relinquished his equitable interest in this property, whatever that interest may have been.

The memorandum of June 1, 1889, signed by Lane, and which contained the statement that: "All agreements signed by me previous to this date are to be cancelled," referred to a number of pieces of property not mentioned in any of the prior statements. Shortly after the defendant's qualification as trustee, the plaintiff produced this memorandum and at the same time presented to the defendant the statement above referred to of the different pieces of property held by Lane in which he was concerned, and which he was entitled to receive upon making certain payments; this statement referred to all of the properties mentioned in the memorandum of June 1, together with an additional lot. Subsequently a settlement was made between the plaintiff and the trustee, under the authority of the probate court, based upon this claim and upon the memorandum of June 1.

After acting upon this memorandum and obtaining a settlement with the trustee based thereon, and after making a claim relative to his interest in this property, which, as we have seen is entirely inconsistent with the one made by him in his bill, it is too late now for the plaintiff to repudiate the statement contained in that memorandum, that all previous agreements were to be cancelled and the irresistible inference to be drawn from the transaction, and to claim that, instead of merely having an option to purchase the property within a limited time, he is a cestui que trust as to one-half of the property.

We are satisfied that the finding and conclusion of the sitting justice were fully justified, and that the plaintiff's conduct, subse-

quent to June 1, 1889, estops him from denying that there had been such a relinquishment of his interest in the property as was found by the justice who heard the cause.

The plaintiff also excepts to a ruling excluding a paper offered by him. When the memorandum of December 10, 1886, was offered it appeared that there was attached to it by mucilage another paper, unsigned, not in the hand writing of either of the parties, dated January 31, 1890, after Lane's death, and said to have been drawn by an attorney of the plaintiff.

This unsigned paper does not show by whom it was to be signed, although very likely when drawn it was intended that it should be signed by the plaintiff. It contained an agreement that this property in question should be held by the defendant as trustee, "as security for the payment of any sums of money due from me upon any notes indorsed by said Lane for my benefit (if any such there are) and not mentioned in the petition for leave to settle filed in the probate court for Cumberland county and acted upon January, 1890, all other conditions of said holding not to be affected by this assent." And also an assignment to a third party of "all my right, title and interest in and to the within agreement and declaration to which this is annexed and the property therein described."

Objection was made to the admission of the memorandum of December 10, 1886, while this paper remained attached, and the court excluded the memorandum until the unsigned paper was detached; this was finally done; the memorandum signed by Lane was then admitted without objection and exception taken by the plaintiff to the exclusion of this other paper.

We can conceive of no reason why this unexecuted paper should have been admitted. It was never completed. It was not in the possession of the defendant, and there was no satisfactory evidence that he had any knowledge of its existence. No legitimate inference of any kind could have properly been drawn from it. We think the ruling was unquestionably correct.

*Appeal dismissed. Exceptions overruled.*
*Decree below affirmed with additional costs.*